UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

MARLENE S.[1],

      Plaintiff,

    v.                                                              21-CV-5 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

———————————————————

## DECISION AND ORDER

Plaintiff Marlene S. brought this action under 42 U.S.C. §§ 405(g) and
1383(c)(3) of the Social Security Act, seeking review of the decision made by the
Commissioner of the Social Security Administration finding that she was not
disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The
Commissioner responded and cross-moved for judgment on the pleadings, to which
Plaintiff replied. Dkts. 11, 12. For the reasons below, the Court denies Plaintiff's
motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing
Order regarding the naming of plaintiffs in Social Security decisions, this decision
and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security

Income ("SSI"), filed on February 10, 2015.[2] Tr. 320-26.[3] Plaintiff's application was

initially denied and upon reconsideration, and she requested a hearing before an

administrative law judge ("ALJ"). Tr. 89-11, 170-87. At the first administrative

hearing, Plaintiff was without counsel, so ALJ Paul Georger granted Plaintiff an

adjournment. Tr. 46-50.

Following the second hearing, ALJ Georger issued a decision finding that

Plaintiff was not disabled. Tr. 112-32. Plaintiff requested Appeals Council review,

and her case was remanded for further administrative proceedings. Tr. 133-38. A

third hearing was held on October 4, 2019, after which ALJ Georger issued a second

decision finding that Plaintiff was not disabled. Tr. 139-66. Plaintiff's request for

Appeals Council review was denied, and Plaintiff then commenced this action. Tr.

1-6; Dkt. 1.

## LEGAL STANDARDS

### I.  District Court Review

Judicial review of disability claims under the Act is limited to whether the

Commissioner's decision is supported by substantial evidence and whether the

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted).

[3] The filing at Dkt. 6 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 6 are hereby denoted "Tr. __."

correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   Disability Determination

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful

activity.  20 C.F.R. § 416.920(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit.  20 C.F.R. § 416.972.  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c); *see Bowen v. Yuckert*, 482 U.S. 137, 142-45 (1987).  Absent such impairment, the claimant may not claim disability.  *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(c).  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  20 C.F.R. § 416.945.

4

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 416.960(c); *see Bowen*, 482 U.S. at 146 n.5. Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since filing her application on February 10, 2015. Tr. 145. The ALJ also found that Plaintiff suffered from the following severe impairments: major depressive disorder, bipolar disorder, posttraumatic stress disorder ("PTSD"), fibromyalgia, recurrent iritis of the left eye, chorioretinal scars in both eyes, degenerative disc disease of the lumbar spine, cervical spondylosis, asthma, and

obesity. Tr. 146. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 146-50.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [Plaintiff] can climb ramps, stairs, ladders, ropes, or scaffolds occasionally. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to visual hazards in the workplace such as boxes on the floor or doors left ajar. She can have no exposure to unprotected heights or moving mechanical parts. She cannot operate a motor vehicle. She can have occasional exposure to humidity and wetness, pulmonary irritants, and extreme cold and heat. She is limited to simple, routine, repetitive tasks, not at a production rate. She can make simple work-related decisions. She can have occasional interaction with co-workers, supervisors, and the general public.

Tr. 150.

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 158. But the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. Tr. 158-59. As such, according to the ALJ, Plaintiff had not been under a disability since her application date of February 10, 2015. Tr. 159.

## II.    Plaintiff's Argument

Plaintiff argues that the ALJ improperly evaluated the opinion of her treating nurse practitioner Faye Taber, N.P.  *See* Dkt. 8-1, at 10-14.  As set forth below, Plaintiff's argument is without merit.

## III.   Analysis

For claims filed before March 27, 2017, an ALJ must give controlling weight to the opinion of a claimant's treating physician "so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record."  *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022); *see* 20 C.F.R. § 416.927(c)(2).  A treating nurse practitioner, however, is not an "acceptable medical source" whose opinions are entitled to deference.  *See* SSR 06-03p, 2006 WL 2328838, at *2 (Aug. 9, 2006).  The ALJ must still consider a nurse practitioner's opinion if it is relevant to the claimant's disability determination.  *See Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015); 20 C.F.R. § 416.927(f).

Here, NP Taber completed a mental RFC capacity questionnaire on April 4, 2018.  *See* Tr. 639-44.  NP Taber reported that Plaintiff had a current Global Assessment of Functioning ("GAF") score of 43.[4]  Tr. 639.  She opined that Plaintiff

---

[4] A claimant's GAF score is rated on a scale of 0-100 and is used to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* 32 (4th ed. 2000); *see Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008).  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting OR any serious

was unable to meet competitive standards or had no useful ability to function in 18 of 25 mental abilities and aptitudes assessed in the questionnaire. *See* Tr. 641-42. NP Taber also opined that Plaintiff would miss four or more days of work per month because of her mental impairments and be unable to engage in full-time competitive employment on a sustained basis. Tr. 643-44.

The ALJ afforded NP Taber's opinion "little weight." Tr. 157. The ALJ gave the GAF score report little weight because it represented a snapshot finding and did not lend itself to a longitudinal assessment of Plaintiff's limitations. *Id.* The ALJ also gave little weight to the remainder of the opinion, because NP Taber's finding of limitations precluding Plaintiff from full-time competitive work was "not supported by appropriate findings" and inconsistent with her report that Plaintiff "could manage benefits in her own best interest." *Id.* The ALJ also found that NP Taber's assessment of essentially disabling limitations "far exceed[ed] the mental status findings and [Plaintiff's] self-reported activities of daily living." *Id.*

Plaintiff argues that the ALJ put "his own reading of treatment above that of the treating NP." It was the ALJ's job, however, to assess whether NP Taber's opinion was supported by her own clinical findings and consistent with the other evidence in the record. *See* 20 C.F.R. § 416.927(f); *cf. Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (holding that an ALJ may discount a treating physician's opinion if it is inconsistent with the physician's own treating notes, the

---

impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *DSM-IV-TR* at 34.

other medical opinion evidence, and the claimant's self-reported activities of daily living). Plaintiff also argues that the ALJ mischaracterized her activities of daily living and used them to discount improperly NP Taber's opinion. *See* Dkt. 8-1, at 12-14. But the ALJ is allowed to consider a claimant's activities of daily living. *See* 20 C.F.R. § 416.929; *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013). The ALJ noted that Plaintiff could take care of her cats, do laundry, cook, shop, perform personal care, use the computer 1-2 hours per day, and perform childcare. *See* Tr. 152-53. These reported abilities were inconsistent with NP Taber's finding of disabling limitations and, as such, the ALJ was permitted to discount NP Taber's opinion. *Cf. Rusin*, 726 F. App'x at 840-41 (noting that a claimant's report of disabling symptoms was inconsistent with his testimony that "he cooked simple meals daily, left the house daily, [could] drive, and shopped for groceries every two weeks.").

Lastly, Plaintiff claims that by discounting NP Taber's opinion and relying on the opinions of consultative examiners, the ALJ impermissibly relied on a snapshot of her mental health. *See* Dkt. 8-1, at 14. Plaintiff is correct to the extent that an ALJ should exercise caution in relying on a consultative examiner's opinion, as a "one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). But the ALJ may favor a consultative examiner's opinion over that of a treating provider. *See* *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016); *see also Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of

nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."). Despite discounting NP Taber's opinion, the ALJ still relied on Plaintiff's testimony, treatment records, and the opinions of three consultative examiners to grapple with Plaintiff's fluctuating mental health. *See* Tr. 151-53, 154-57; *see also Estrella*, 925 F.3d at 97 ("The ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in Estrella's mental health . . . .").

Evaluating NP Taber's opinion was a task wholly within the province of the ALJ. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks and citation omitted) ("[A]n [ALJ] is free . . . to choose between properly submitted medical opinions . . . ."). Plaintiff failed to show that no other reasonable factfinder would reach the same conclusions as the ALJ with respect to NP Taber's opinion. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). As such, the ALJ's consideration of NP Taber's opinion was supported by substantial evidence and free from legal error.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8).  The Clerk of the Court will close this case.

SO ORDERED.

Dated:    March 30, 2023
          Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE